IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RICK AND MARILYN WETHERINGTON, | ) ) ) | No. 2:11-cv-00465-DCN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER** |
| THE BENEVOLENT AND PROTECTIVE ORDER OF THE ELKS OF THE USA AND THE GRAND LODGE, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter comes before the court on defendant's motion for summary judgment. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

This case was filed by plaintiffs Rick and Marilyn Wetherington (the Wetheringtons) on November 19, 2010 in the Charleston County Court of Common Pleas.  Defendant The Benevolent and Protective Order of the Elks of the USA and the Grand Lodge (Grand Lodge), a "National Fraternal Order," Compl. ¶ 2, removed the case to federal court on February 25, 2011, and answered the complaint on March 4, 2011.  On April 30, 2012, defendant filed a motion for summary judgment.  The Wetheringtons did not file a response in opposition until November 30, 2012.[1]  The court held a hearing on December 6, 2012.

---

[1] In the response brief, plaintiffs' counsel does not mention why the response in opposition was not filed until seven months after the motion for summary judgment was filed.  On June 27, 2012, the court entered a text order directing plaintiffs to show cause why the case should not be dismissed for failure to file a timely response.  The court recognizes that at the time, Mr. Wetherington was recovering from injuries sustained in an attack and plaintiffs' counsel needed more time to take the deposition of Howard Walker.  Still, plaintiffs' counsel stated on July 9,

1

Viewing the facts in the light most favorable to plaintiffs, this case stems from a

raffle that took place on January 7, 2006 at Lodge No. 242 of the Benevolent and

Protective Order of Elks in Charleston, South Carolina (the Charleston Lodge), of which

Mr. Wetherington is a member.  The Wetheringtons allege that Howard Walker, a former

Elks member and treasurer at the time, rigged the drawing so that his wife could take

home the $11,120 prize.  On January 9, 2006, Mr. Wetherington filed a notice of intent to

file a complaint within the Elks internal judicial system.  A preliminary hearing was set

for February 26, 2006.  One day earlier, on February 25, 2006, Mr. Wetherington was

allegedly assaulted by the Public Relations Committee Chairman of the Grand Lodge.

Mr. Wetherington decided to pursue charges of assault and battery, but was coerced by

brother Elks members to drop the charges.[2]  In April 2006, threats were made against the

Wetheringtons so that they would drop their internal complaint against Mr. Walker for

stealing the prize money.

On May 10, 2006, the internal complaint was dismissed by the trial level court at

the Charleston Lodge.  On June 27, 2006, an appeal was granted by the Grand Lodge and

a trial was ordered, but the trial never happened.  By September 2008, Mr. Wetherington

was elected President/Exalted Ruler of the Charleston Lodge.  He requested that the

Grand Lodge appoint a "Steering Committee" to investigate the delay of the trial

regarding Mr. Walker and the raffle.  Arthur "Jack" Frost, who served as a member of the

_____

2012 that "plaintiff has recovered and now asks this court to allow this action to proceed."  Dkt. No. 29 at 2.  In addition, Mr. Walker's deposition was taken on September 21, 2012.  Therefore, the response brief should have been filed by late September or early October.  The lack of a timely response could have been reason enough to grant summary judgment in favor of defendant.  See, e.g., Chimners v. Gen. Elec. Capital Corp., No. 10-126, 2010 WL 2595308, at *3 (D.S.C. June 23, 2010).
[2] It is the court's understanding that although the Elks allow female members, Lodge No. 242 has never approved an application submitted by a female, hence the use of the word "brother."

Grand Lodge and the SC/NC State Sponsor, sent the Steering Committee, which consisted of three members of the Grand Lodge, to Charleston.  Allegedly, the Steering Committee also attempted to coerce Mr. Wetherington to drop his complaint against Mr. Walker.

The internal complaint against Mr. Walker remains pending in the Elks judicial system, but Mr. Walker resigned from membership in the Elks on June 28, 2007 due to "events at our Charleston Elks Lodge [that] have spoiled my Elks membership."  Def.'s Mot. Summ. J. Ex. F.[3]

In April 2010, Mr. Wetherington was appointed Esquire of the Charleston Lodge and member of the House Committee.  However, the appointer, Reverend Kim Strong (then-President/Exalted Ruler of the Charleston Lodge), was directed by State Sponsor Frost to remove these appointments within thirty days.  On May 28, 2010, Reverend Strong informed Mr. Wetherington that he must be removed from his posts effective June 1, 2010.

In their complaint, the Wetheringtons bring claims against the Grand Lodge for conversion, unjust enrichment, fraud, and intentional infliction of emotional distress.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v.

---

[3] How the Elks judicial system could have jurisdiction over a non-Elk is an interesting question that this court need not resolve.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Id.  At the summary judgment

stage, the court must view the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in its favor.  Id. at 255.

### III.  DISCUSSION

Defendant moves for summary judgment on several grounds, including that most

claims are barred by the three-year statute of limitations and that the claims fail as a

matter of law.

### A.  Statute of Limitations

The majority of the Wetheringtons' claims for conversion, fraud, and intentional

infliction of emotional distress are barred by the three-year statute of limitations found at

South Carolina Code Annotated § 15-3-530.  "Pursuant to S.C. Code Ann. § 15-3-530, a

three-year statute of limitations applies to a number of actions, including but not limited

to, various tort claims [and] breach of contract claims."  Mungo v. CUNA Mut. Ins.

Soc'y, No. 11-464, 2012 WL 3704924, at *5 (D.S.C. Aug. 24, 2012).  The complaint was

filed on November 19, 2010, so the statute of limitations would bar recovery for harm

that allegedly occurred before November 20, 2007.

### 1.  Conversion

First, plaintiffs bring a claim for conversion under South Carolina law.[4]  "The

statute of limitations for both an action upon a contract and a conversion claim is three

---

[4] To bring a claim for conversion under South Carolina law, a plaintiff must establish the
"unauthorized assumption and exercise of the right of ownership over goods or personal chattels
belonging to another, to the alteration of the condition or the exclusion of the owner's rights."
Crane v. Citicorp Nat'l Servs., 437 S.E.2d 50, 52 (S.C. 1993).  "Conversion may arise by some

4

(3) years." Walsh v. Woods, 594 S.E.2d 548, 551 (S.C. Ct. App. 2004).  Under the discovery rule, "the statute of limitations begins to run from the date the injured party either knows or should have known by the exercise of due diligence that a cause of action arises from the wrongful conduct."  Id. (citing Dean v. Ruscon Corp., 568 S.E.2d 645, 647 (S.C. 1996)).  "The date on which discovery of the cause of action should have been made is an objective question."  Joubert v. S.C. Dep't of Soc. Servs., 534 S.E.2d 1, 9 (S.C. Ct. App. 2000).

By plaintiffs' own admission, the allegedly improper raffle took place on January 7, 2006.  The raffle incident is the only factual basis supporting plaintiffs' claim for conversion.  See Compl. ¶ 7 ("The Defendants took possession of the sum of not less than Eleven Thousand and .00 ($11,000.00) Dollars from the Plaintiffs and members by fraudulent means."); id. ¶ 8 ("That the Defendants have committed and effected conversion of Plaintiffs' funds for the benefit of the Defendants to the detriment and harm of the Plaintiffs.").  Therefore, the conversion claim is barred in its entirety by the statute of limitations.

### 2.  Fraud

Second, the Wetheringtons bring a claim for fraud.  A fraud action is governed by a three-year limitations period that is subject to the discovery rule.  Turner v. Miliman, 671 S.E.2d 636, 640 (S.C. Ct. App. 2009).  All fraud-based claims that involve allegedly harmful conduct predating November 20, 2007 are barred.  This includes a fraud claim based on the allegedly improper raffle drawing in 2006.  However, the Wetheringtons' claim for fraud based on the Grand Lodge's appointment of a Steering Committee to

---

illegal use or misuse, or by illegal detention of another's personal property."  Regions Bank v. Schmauch, 582 S.E.2d 432, 442 (S.C. Ct. App. 2003).

investigate into matters occurring at the Charleston Lodge would not be barred by the

statute of limitations, since the appointment allegedly occurred in 2008.

### 3.  Intentional Infliction of Emotional Distress

Third, the Wetheringtons assert a claim for intentional infliction of emotional

distress (IIED).  The Fourth Circuit has held that under South Carolina law, a three-year

statute of limitations governs IIED claims.  See Parkman v. Univ. of S.C., No. 01-1596,

2002 WL 1792098, at *11 (4th Cir. 2002).  All allegations of physical altercations,

threats, and other interactions with Charleston Lodge members occurring before

November 20, 2007 that form the basis of an IIED claim are untimely.  The viability of

any remaining claims is discussed below.

### B.  Whether Plaintiffs' Claims Fail as a Matter of Law

To the extent they are not barred by the statute of limitations, the Wetheringtons'

claims for unjust enrichment, fraud, and IIED fail as a matter of law.

### 1.  Unjust Enrichment

To recover for unjust enrichment a plaintiff must show:  "(1) that he conferred a

non-gratuitous benefit on the defendant; (2) that the defendant realized some value from

the benefit; and (3) that it would be inequitable for the defendant to retain the benefit

without paying the plaintiff for its value."  Sauner v. Public Serv. Auth. of S.C., 581

S.E.2d 161, 167 (S.C. 2003).  There is no evidence that plaintiffs conferred a benefit on

the Grand Lodge.  Therefore, the court grants summary judgment on this claim.

### 2.  Fraud

The sole allegations of fraud in the complaint are as follows:

> That the Defendants named above did make statements and
> representations to the Plaintiffs which benefited the Defendants to the total

6

detriment of the Plaintiffs.  That the Defendants knew at the time of these representations that said representations were false, to the detriment of the Plaintiffs.   That the Plaintiffs were ignorant of the falsity of the Defendants statements and relied upon said statements to [their] detriment.  That the Plaintiffs have suffered damages in an amount not less than One Million and 00/100 ($1,000,000.00) Dollars, and seek[] actual, consequential, and punitive damages for the same as well as attorney's fees and costs.

Compl. ¶¶ 13-16.  These allegations fail to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P 9(b).  This Rule requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  U.S. ex rel. Elms v. Accenture LLP, 341 F. App'x 869, 872 (4th Cir. 2009).  These requisite allegations are lacking.

Moreover, the Wetherington's timely fraud claims fail as a matter of law because they are based on the alleged failure to fulfill a promise as to a future event.  The Wetheringtons claim that the Grand Lodge's appointment of a Steering Committee was fraudulent because "the representation that this committee was appointed to assist Plaintiff was materially false."  Pls.' Resp. 15.  This allegation concerns an alleged failed future promise that the Steering Committee would assist the Wetheringtons by investigating the matter concerning Mr. Walker and make findings in favor of the Wetheringtons.  It is well established that "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events."  Woodward v. Todd, 230 S.E.2d 641, 643 (S.C. 1978).

For these reasons, the court grants summary judgment on the fraud claims not barred by the statute of limitations.

### 3.   Intentional Infliction of Emotional Distress

Finally,

> To establish intentional infliction of emotional distress or outrage, a plaintiff must establish:   (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.

Melton v. Medtronic, Inc., 698 S.E.2d 886, 891 (S.C. Ct. App. 2010).  There is no evidence that the Grand Lodge's conduct was "so extreme and outrageous as to exceed all possible grounds of decency."  Id.  In fact, evidence submitted to the court shows that after the allegedly improper raffle occurred, Mr. Wetherington continued to take an active role in the Charleston Lodge, going on to become the President/Exalted Ruler of the Lodge.  While the Wetheringtons may have suffered some distress, they have not put forth evidence to create a genuine issue of fact as to whether they have suffered *severe* emotional distress.  See Melton, 698 S.E.2d at 891.  As such, the court grants summary judgment on this claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** defendant's motion for summary judgment.[5]

**AND IT IS SO ORDERED**.

---

[5] Defendant has additionally filed a motion to seal documents submitted to the court for *in camera* review in conjunction with their motion for summary judgment, since the documents concern the medical history of Mr. and Mrs. Wetherington.  Because the court grants summary judgment on all claims and the case will be closed, the motion to seal is rendered moot.

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 12, 2012**
**Charleston, South Carolina**